IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Uuno Mattias Baum, #272249,            ) | |
| ) | C/A No. 9:06-2471-MBS-GCK |
| Petitioner,            ) | |
| ) | |
| vs.            ) | **OPINION AND** |
| ) | **O R D E R** |
| Collie Rushton, Warden, McCormick            ) | |
| Correctional Instituion,            ) | |
| ) | |
| Respondent.            ) | |
| ) | |

Petitioner Uuno Mattias Baum is an inmate in the custody of the South Carolina Department of Corrections. Petitioner is currently housed in Lee Correctional Institution pursuant to orders of commitment from the Clerk of Court of Pickens County. Petitioner, represented by counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he is being held in custody unlawfully.

This matter is before the court on cross-motions for summary judgment. Respondent filed a motion for summary judgment on December 15, 2006. By order filed December 18, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On December 19, 2006, Petitioner was granted an extension of time to respond. Petitioner filed a response to Respondent's motion for summary judgment and filed a cross-motion for summary judgment on January 25, 2007.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge George C. Kosko for pretrial handling. The Magistrate Judge issued a Report and Recommendation ("Report and Recommendation") on April 30, 2007,

in which he recommended that Respondents' motion for summary judgment be granted and Petitioner's motion for summary judgment be denied. Petitioner filed objections to the Report and Recommendation on June 1, 2007. (Petitioner's Objections.)

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The district court need not conduct a de novo review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982).

**FACTS**

Randall Pinion, Petitioner's stepfather, disappeared after work on or about October 29, 1999. (Respondent's Mot. for Summary Judgment Ex. 1 (Record on Appeal) at 162-63.) Police discovered Randall Pinion's blood in his home and his pick up truck. (Id. at 117-24, 148, 261-62.) Police also found a bloody shoe print inside Pinion's home. (Id. at 125-27.) Petitioner was developed as a suspect in the case. (Id. at 238.) On November, 7, 1999, after a high speed chase, Petitioner was arrested. (Id. at 238-43.) In Petitioner's vehicle, police found the keys to Pinion's truck, a few checks belonging to Pinion, and a pair of white tennis shoes with tread consistent with the bloody shoe print found earlier at Pinion's home. (Id. at 132-34, 136-37, 244-45.) Authorities were unable

to locate Pinion's body. Nevertheless, on November 11, 1999, the Pickens County Grand Jury returned an indictment charging Petitioner with murder. On October 9, 2000, the trial against Petitioner began before the Honorable John W. Kittredge.

On the first day of trial, the jury heard the testimony of three witnesses. On the second day of trial, the solicitor informed the trial court that a body had been found in North Carolina that was identified through dental records as the victim. The solicitor moved for either a continuance or a mistrial. The solicitor stated:

> I feel I have to move for either a continuance or a mistrial in order to give both sides of this case time to look at what evidence may come forward as result of this.
>
> Obviously, there may be — we don't know what's going to show up, but there may be evidence exculpating the defendant. And if that's true, he needs to have access to that. Conversely, there may be evidence that inculpates him and shows that he, in fact, is the one who dumped the body. And if that's the case, he should not be allowed to benefit from his attempt at obstructing justice.
>
> Either way, Your Honor, I am aware that the jury has been sworn. I would ask that your honor, if you are inclined to grant my motion, find that this is for good cause and not as a result of some wrongdoing or anything else in that way of the state, and therefore would not prejudice us by attaching jeopardy to a trial we've begun.
>
> Your Honor knows that we are here and are prepared to go forward, and it's not any attempt whatsoever to continue this trial. As a matter of fact, I believe myself and the family who are here behind me are as ready as the defendant himself to get this behind us. But this is important evidence that we need to have some time to look at.

(Id. at 5-6.)

In response, Petitioner's counsel stated, "Just for the record, that is certainly the State's motion. The defense is not joining in that motion in any way, shape, form or fashion. We are here. We're ready for trial. And we're ready to proceed." (Id. at 6.)

Subsequently, the trial court orally declared a mistrial, stating:

3

> I'm going to declare a mistrial. I have received an affidavit from the dentist. Based on his review of the situation and a conference with the medical examiner for the State of North Carolina, based on the level of certainty that this may, indeed, be the remains of Mr. Pinion, that a mistrial is warranted for good cause, not the result of anything caused or done, any act or omission by the state. I feel this is a matter of manifest necessity and that jeopardy will continue. Jeopardy does not attach and begin anew in my firm judgment. And I so rule that this is a matter of manifest necessity that potentially could enure to the benefit of the defendant. A key issue in the case was the fact that the body had not been found. This revelation is significant. And if it actually turns out, based on the scientific examination that this is indeed the remains of Mr. Pinion, then this case should well not continue and be retried at another date.
> Again, I note jeopardy will continue, and that's my ruling in the case.

(Id. at 6-7.)

On November 8, 2000, the trial court filed an order recording his ruling on mistrial. In the written order, the trial court found that the discovery of Pinion's body almost one year after the date of the alleged murder was not the result of "omission, negligence, bad faith, or lack of effort on the part of the State," that it was reasonable to find that whoever placed Pinion's body in the "remote area of McDowell county did so to secrete the whereabouts of the deceased and avoid detection," and that the trial began on October 9, 2000 because the defendant had been incarcerated since November 7, 1999, was unable to make bond, and "there was an order requiring the case to proceed to trial." (Id. at 9.) After reviewing all the circumstances, finding that the potential that exculpatory evidence existed with the body and disposition site was significant, and finding "there was no other alternative available to the court to resolve this matter," the trial court held that it was "of manifest necessity that a mistrial be granted in this case." (Id. at 9-10.) Based on federal and state law, the trial court further reasoned that "to suspend the trial of the case and allow the sitting jury to resume the trial approximately two months later would be fundamentally unfair to all concerned (especially Defendant and the jurors) and contrary to the ends of justice." (Id. at 10.)

On January 22, 2001, Petitioner was called before a second jury for trial on the same murder charge. Petitioner's counsel moved to bar the second trial based on double jeopardy pursuant to the Fifth and Fourteenth Amendments. (Id. at 14-28.) Petitioner's motion was denied. (Id. at 28.) Petitioner was found guilty of murder on January 24, 2001, and sentenced to life. (Id. at 289.) Petitioner appealed his conviction, asserting that the discovery of the victim's body did not constitute manifest necessity for a mistrial and therefore, Petitioner's retrial and conviction were barred by double jeopardy. (Respondent's Mot. for Summary Judgment Ex. 3 (Final Brief of Appellant before South Carolina Court of Appeals) at 8-10.)

Petitioner's conviction was affirmed by the South Carolina Court of Appeals. See Baum v. State, 584 S.E.2d 419 (S.C. Ct. App. 2003). The South Carolina Court of Appeals stated:

> [W]e cannot say the body of the victim in this case was **critical** evidence in the prosecution of Baum such that its unavailability triggers the strict scrutiny announced in Arizona [v. Washington, 434 U.S. 497 (1978)]. As noted by Baum, the fact that Randall Pinion had been murdered was not in issue. At any rate, we conclude the discovery of the body of a victim during a murder trial, is an extremely important piece of evidence which has just as much potential to exonerate as to inculpate an accused. The judge recognized as much, and found that the public's interest in a fair adjudication was implicated by the possibility of discovering exculpatory evidence and giving the jury the benefit of the fully developed facts when deciding the matter. Consequently, we believe manifest necessity was clearly established, and find no abuse of discretion in the trial judge's determination that a mistrial was dictated by such.

Id. at 422 (emphasis in original).

Petitioner filed a petition for rehearing on June 26, 2003, which was denied on August 22, 2003. On December 17, 2003, Petitioner filed a petition for writ of certiorari with the Supreme Court of South Carolina. The Supreme Court of South Carolina denied Petitioner's writ of certiorari on October 21, 2004. Petitioner then filed a petition for writ of certiorari with the United States

Supreme Court on January 13, 2005, which was subsequently denied on May 16, 2005.

On September 6, 2006, Petitioner, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner alleged that his conviction and sentence for murder violate the Double Jeopardy Clause of the United States Constitution because 1) jeopardy attached during Petitioner's first trial as the jury had been sworn and three witnesses had testified; and 2) the trial judge's grant of mistrial was constitutional error because it was granted over the Petitioner's objection, and the trial judge did not consider alternatives to mistrial. (Petitioner's Petition for Writ of Habeas Corpus at 7.)

After a thorough review of the applicable law, the Magistrate Judge recommended that the court grant Respondent's motion for summary judgment and deny Petitioner's motion for summary judgment. The Magistrate Judge found that the standard of strict scrutiny did not apply in reviewing the trial judge's grant of mistrial and that the trial judge properly exercised his discretion in finding that manifest necessity existed.

## STANDARD OF REVIEW

An application for a writ of habeas corpus with respect to a claim that was adjudicated on the merits in State court proceedings cannot be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A determination of a factual issue made by a State court is presumed to be correct. Petitioner has the burden of rebutting the presumption of correctness by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1).[1]

A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," id., "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts," Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision "involve[s] an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), when the state court "identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case," Williams, 529 U.S. at 413. The court's "review is . . . deferential because [the court] cannot grant relief unless the state court's result is legally or factually unreasonable." Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000) (quoting Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).

---

[1] In Petitioner's Objections to the Magistrate Judge's Report and Recommendation, the Petitioner contends that the "presumption of correctness" standard articulated in Section 2254(e)(1) should not be read together with Section 2254(d). (Petitioner's Objections to the Report and Recommendation at 1-7.)  Contrary to the Petitioner's contentions, courts have read these two statutory provisions together.  See Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006)(citing Miller-El, 545 U.S. at 240 and Wilson v. Ozmint, 352 F.3d 847, 858-60 (4th Cir. 2003)); cf. Rice v. Collins, 546 U.S. 333, 338-39 (2006)(setting forth the standards in both sections of the statute but then finding the question regarding the application of § 2254(e)(1) need not be addressed because even if only Section 2254(d)(2) applied, the state-court decision was not "an unreasonable determination of the facts in light of the evidence presented in the state court"). Although a few courts in other circuits have analyzed the relationship between Sections 2254(d)(2) and 2254(e)(1) and found that they should be read separately, see Lambert v. Blackwell, 387 F.3d 210, 235-37 (3d Cir. 2004); Taylor v. Maddox, 366 F.3d 992, 999-1008 (9th Cir. 2004); Breighner v. Chesney, 301 F. Supp. 2d 354, 365-66 (M.D. Pa. 2004), the Fourth Circuit has held that both United States Supreme Court and Fourth Circuit precedent indicate the two provisions are interrelated. See Lenz, 444 F.3d at 300-01.  As such, Petitioner's objection is without merit.

**DISCUSSION**

The Fifth Amendment prohibition against double jeopardy, applied to the states through the Fourteenth Amendment, generally requires that a criminal defendant not be tried for the same offense twice. See Benton v. Maryland, 395 U.S. 784 (1969). The constitutional protection afforded by the Double Jeopardy Clause "embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" Arizona v. Washington, 434 U.S. 497, 503 (1978). Yet, a retrial is not always automatically barred when a mistrial is granted before a jury resolves the merits of the charges, id. at 505, even when a defendant objects to a grant of mistrial, Illinois v. Somerville, 410 U.S. 458, 461 (1973). Nonetheless, because of the importance of the defendant's constitutional right, any mistrial must be justified by a showing of "manifest necessity" or that the ends of justice would be defeated if a mistrial were not granted. See Washington, 434 U.S. at 505; Gilliam v. Foster, 75 F.3d 881, 893 (4th Cir. 1996).

A determination of whether "manifest necessity" has been shown, is not a mechanical one but rather requires consideration of the particular circumstances before the trial judge. See Washington, 434 U.S. at 506. The word "necessity" in manifest necessity, is not meant to be taken literally. Id. Rather, a high degree of necessity should be demonstrated. Id. When looking at the record, the reviewing court should determine whether the trial judge exercised "sound discretion." See Washington, 434 U.S. at 516; Gilliam, 75 F.3d at 894. Additionally, trial judges are generally granted broad discretion to declare a mistrial. See Illinois v. Somerville, 410 U.S. at 462; Gilliam, 75 F.3d at 894.

**A.**

Petitioner claims that while the South Carolina Court of Appeals appropriately identified the

controlling federal law, the court of appeals unreasonably applied the law. First, Petitioner contends the court of appeals' failure to address the availability of less drastic alternatives to mistrial constitutes an unreasonable application of federal law. (Petitioner's Mot. for Summary Judgment at 27-28.) The court disagrees.

In this case, the South Carolina Court of Appeals determined that the trial judge's finding of manifest necessity was appropriate and based on sound reasoning. See Baum, 584 S.E.2d at 422. Additionally, as set forth in the facts herein, the trial judge articulated his concern for possible double jeopardy consequences as well as considered alternatives. The mere fact that the South Carolina Court of Appeals did not explicitly state whether the trial judge considered available alternatives, does not mean the court of appeals' application of federal law was unreasonable. See Washington, 434 U.S. at 516-17 (stating when the record provides "sufficient justification for the state court ruling, the failure to explain that ruling more completely does not render it constitutionally defective"). Moreover, in Washington, the Supreme Court found that although alternatives to mistrial were available to the trial judge, because the trial judge exercised "sound discretion," by showing concern for possible double jeopardy consequences and giving both parties opportunity to explain their positions on mistrial, the writ should be denied. See id. at 512-15. As such, the South Carolina Court of Appeals ruling affirming the trial judge's grant of mistrial, without specifically addressing available alternatives, was not an unreasonable application of federal law.

Second, the Petitioner contends that the South Carolina Court of Appeals failed to determine whether the trial judge made a reasoned decision, and that failure constitutes an unreasonable application of federal law. (Petitioner's Mot. for Summary Judgment at 28-29.) The Petitioner's second contention is also without merit. The court of appeals found that the trial judge recognized

the murder victim's body to be an important piece of evidence with equal potential to exculpate as inculpate. Following from this, the court of appeals stated the trial judge found that the potential for discovering exculpatory evidence and "giving the jury the benefit of fully developed evidence," implicated the public's interest in a fair adjudication. See Baum, 584 S.E.2d at 422. Although the South Carolina Court of Appeals did not specifically indicate it found the trial judge made a reasoned decision, with those exact words, it is clear that the court of appeals reviewed the trial court's decision and found it appropriate based on sound discretion. As such, the South Carolina Court of Appeals decision did not unreasonably apply the federal law. See Washington, 434 U.S. at 516-17 (finding that when the record provides "sufficient justification for the state court ruling, the failure to explain that ruling more completely does not render it constitutionally defective").

Third, the Petitioner contends that the South Carolina Court of Appeals' finding that the trial court did not grant a mistrial in order to allow the prosecution to secure critical evidence, was an unreasonable application of federal law. The South Carolina Court of Appeals found that the victim's body did not constitute critical prosecution evidence. See Baum, 584 S.E.2d at 422. Petitioner asserts that the victim's body was critical evidence, and that a reasonable application of Arizona v. Washington would have led the court of appeals to find that mistrial was inappropriately granted for the purpose of allowing the prosecution to secure the body. (Petitioner's Mot. for Summary Judgment at 29-30.) The court disagrees.

In Arizona v. Washington, the Supreme Court states that "when the basis for a mistrial is unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused," a reviewing court should apply the strictest scrutiny to the mistrial decision. Washington,

434 U.S. at 508. Strict scrutiny should apply in these situations because the protection contained in the Double Jeopardy Clause is meant to shield the defendant from multiple prosecutions and bar retrials where a judge or prosecutor, in bad faith, seeks a mistrial to "afford the prosecution a more favorable opportunity to convict the defendant." Id.

The court of appeals' finding that the victim's body did not constitute critical prosecution evidence was not unreasonable. The idea that unavailability of critical prosecution evidence should trigger strict scrutiny review of a grant of mistrial, is based on the principle that the prosecution should not be given an opportunity to bolster its case in a way that gives the prosecution an unfair advantage. Washington, 434 U.S. at 508. This leads to a reasonable understanding that evidence is "critical" when its sole purpose is to bolster the prosecution's case. At the time the body was found, neither the prosecution nor the Petitioner knew what evidence would arise from the body. (Respondent's Mot. for Summary Judgment Ex. 1 (Record of Appeal) at 5-6.) As a result, it was possible that evidence arising from the body could either further inculpate the Petitioner, or could exculpate the Petitioner. (Id.) As such, it is reasonable to believe that any evidence arising from an examination of the victim's body would not be solely for the prosecution's benefit, and therefore does not constitute "critical prosecution evidence." The South Carolina Court of Appeals' finding that the victim's body was not critical evidence is not an unreasonable application of federal law. It follows that the court of appeals' further finding that the trial judge's basis for granting mistrial was not to give the prosecution an opportunity to secure critical prosecution evidence is not unreasonable.

Finally, Petitioner contends that the South Carolina Court of Appeals limited its review of whether manifest necessity existed to whether mistrial was granted so that the prosecution could

secure critical evidence. Petitioner argues that because the range of situations where manifest necessity was found not to exist is broader than whether mistrial was granted to allow prosecution to secure critical evidence, the South Carolina Court of Appeals' determination was an unreasonable application of federal law. (Petitioner's Mot. for Summary Judgment at 30.) Contrary to Petitioner's contentions, the South Carolina Court of Appeals did not limit itself when making a determination of whether mistrial was appropriately granted. After finding that mistrial was not granted in order to allow the prosecution to secure critical evidence, the South Carolina Court of Appeals went on to find that the victim's body was important evidence to both parties in a murder prosecution because it had the potential to produce both inculpatory and exculpatory evidence. See Baum, 584 S.E.2d at 422. Since discovery of the victim's body could produce exculpatory evidence, the court of appeals found that the public's interest in fair adjudication was implicated and it was important to give the jury the benefit of fully developed facts. Id. The South Carolina Court of Appeals reviewed the particular circumstances facing the trial judge and made a determination of whether manifest necessity existed. As such, the South Carolina Court of Appeals reasonably applied the federal law. See Washington, 434 U.S. at 506 (determining whether manifest necessity has been shown requires consideration of the particular circumstances before the trial judge).

**B.**

Petitioner also asserts that the South Carolina Court of Appeals' decision is an unreasonable determination of the facts in light of the evidence presented in the state court proceedings for two reasons. First, Petitioner contends that the court of appeals' simultaneous findings that the victim's body was not critical evidence but was extremely important evidence was unreasonable. (Petitioner's Mot. for Summary Judgment at 30.) The court disagrees. The South Carolina Court

of Appeals found that the victim's body was not critical evidence for purposes of determining whether strict scrutiny review applied under Arizona v. Washington. The court of appeals also found that the body was extremely important evidence for purposes of ensuring that the jury had the benefit of fully developed facts and for the public's interest in fair adjudications, because it had just as much potential to lead to exculpatory evidence as it did to inculpatory evidence. It is not unreasonable for the court of appeals to have found that the body does not constitute "critical prosecution evidence" for one purpose, while at the same time finding it was important for an entirely different purpose.

Second, Petitioner contends that the "state courts simply failed to address the availability of these alternatives [the possibility of granting a continuance instead of mistrial]; thus, the courts unreasonably determined that based on the facts presented manifest necessity existed." (Petitioner's Mot. for Summary Judgment at 31.) Although Petitioner makes arguments that certain factual findings of the trial court are not supported by the record, the gist of his argument is a reassertion of his contention that the court of appeals' failure to address the availability of alternatives is unreasonable. For the reasons already stated, the lack of discussion of available alternatives to mistrial in the decision of the South Carolina Court of Appeals is not unreasonable. See Washington, 434 U.S. at 516-17.

## CONCLUSION

For the reasons stated herein, Respondents' motion for summary judgment is **granted**, Petitioner's motion for summary judgment is **denied;** and the within petition for writ of habeas corpus is dismissed with prejudice.

**IT IS SO ORDERED.**

      s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 30, 2007

## NOTICE OF RIGHT TO APPEAL

**Petitioner is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**