IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UUNO MATTIAS BAUM )<br>    *Petitioner*, )<br> )<br>v. )<br> )<br>COLLIE RUSHTON, Warden, )<br>McCormick Correctional Institution )<br>    *Respondent*. )<br>_____ ) | C/A NO. 9:06-2471-MBS-GCK |

**APPLICATION FOR CERTIFICATE OF APPEALABILITY**

Petitioner, Uuno Mattias Baum, by and through undersigned counsel, and pursuant to 28 U.S.C. §2253(c) and Rule 22(b) of the Federal Rules of Appellate Procedure, hereby requests a certificate of appealability (hereinafter "COA") for the issue set forth in Grounds I of his Petition for Writ of Habeas Corpus. The facts and legal principles supporting the issuance of a COA on these grounds are discussed below.

  I.  THE STANDARD FOR ISSUANCE OF A COA.

"Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a COA" as provided by 28 U.S.C. §2253(c). *Miller-El v. Cockrell*, 537 U.S. 322, 335-336 (2003). A COA should issue where "the applicant has made a substantial showing of the denial of a constitutional right." §2253(c)(2). "Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El*, 537 U.S. at 366 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting in turn *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4

1

(1983)). "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full [appellate] consideration, that petitioner will not prevail." *Miller-El*, 537 U.S. at 338. The severity of the penalty a petitioner faces – in this case, a life sentence – is a proper consideration when determining whether a COA should issue. *Barefoot*, 463 U.S. at 893. "Any doubt whether to grant a COA is resolved in favor of the petitioner . . ." *Miller v. Johnson*, 200 F.3d 274, 280 (5th Cir. 2000); *see also*, *e.g.*, *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001) (quoting *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000)).

## II.    CLAIM FOR WHICH A COA SHOULD ISSUE.

Because this Court has already been supplied with extensive briefing on petitioner's claim for relief, petitioner will not restate his arguments on the merits in detail in this application. In short, petitioner alleged that his conviction was obtained in violation of the Double Jeopardy Clause of the United States Constitution. As, has been set forth in detail in prior submissions, the trial judge granted the state's motion for a mistrial, over defense counsel's objection, after the trial had commenced. The reason the prosecution requested a mistrial was that the victim's body was discovered after the trial had commenced. Petitioner was convicted of murder at the second trial.

On direct appeal, the South Carolina Court of Appeals concluded that it could not "say that the body of the victim in this case was critical evidence in the prosecution of Baum such that its unavailability triggers the strict scrutiny announced in *Arizona* [*v. Washington*, 434 U.S 497 (1978)]." *South Carolina v. Baum*, 584 S.E.2d 419, 422 (S.C. Ct. App. 2003). The court further held that "the discovery of the body of a victim during a murder trial, is an extremely important piece of evidence which has just as much potential to exonerate as to inculpate an accused." *Id*. On these bases, the state court affirmed Mr. Baum's conviction.

The Double Jeopardy Clause, contained in the Fifth Amendment to the United States Constitution, provides that a criminal defendant may not be placed twice in jeopardy. In *Benton v. Maryland*, 395 U.S. 784 (1969), the Supreme Court held that the Double Jeopardy Clause applies to the states through the Fourteenth Amendment. When determining whether a defendant's right to be free from double jeopardy has been transgressed, the first consideration is whether jeopardy has attached. In *United States v. Jorn*, 400 U.S. 470 (1971), the Supreme Court held that jeopardy attaches when a defendant is put to trial before the trier of facts. Thus, jeopardy clearly had attached in the instant case because the jury had been sworn, and in fact, three witnesses had testified.

Petitioner submits that a COA should issue because the reasonable jurists could differ as to whether the state court decision is inconsistent with *Arizona v. Washington*, 434 U.S. 497 (1978). In *Washington*, the Court discussed a spectrum of circumstances for determining the existence (or lack of) manifest necessity. "At one extreme are cases in which a prosecutor requests a mistrial in order to buttress weaknesses in his evidence." *Id.* at 507. In such situations, the "strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is a reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." *Id.* at 508. Meeting this standard will be difficult, if not impossible, for any prosecutor. *Id.* at 508. At the other end of the spectrum - where manifest necessity can more easily be demonstrated - is when a mistrial is granted due to a deadlocked jury. *Id.* at 509.

The Court has made clear that determining whether manifest necessity exists requires a court to consider the facts and circumstances of each case. *Washington*, 434 U.S. at 506. The primary consideration is whether there are alternatives to a mistrial. *Jorn*, 400 U.S. at 487. Another

3

consideration is whether the trial court gave the defendant an opportunity to explain his or her position on a mistrial. *Washington*, 434 U.S. at 515-516. Finally, a court must consider whether granting a mistrial denied the defendant the right to "retain primary control of the course to be followed" at trial. *United States v. Dinitz*, 424 U.S. 600, 609 (1976). Reasonable jurists could differ as this Court's decision that the mistrial in petitioner's case was for the purpose of obtaining critical prosecution evidence. Furthermore, defense counsel was also ready and willing to proceed and thus petitioner was denied the right to retain primary control over the course to be followed at trial and to have his fate decided by the already selected jury..

Furthermore, reasonable jurists could differ as to whether this Court's decision is in conflict with *Downum v. United States*, 372 U.S. 734 (1963), where the United States Supreme Court held that the Double Jeopardy Clause was violated where a trial judge granted a mistrial and found manifest necessity when a prosecution witness did not show up to testify. The Court held that "[t]he situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict." *Downum*, 372 U.S. at 737 (internal citations omitted). Essentially, "when the [prosecutor] impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance." *Id.* Petitioner submits that, as in *Downum*, the prosecution made the decision to proceed to trial without finding the body of the victim, and thus a mistrial was not necessary. Additionally, reasonable jurists could differ as to whether it violated the Double Jeopardy Clause for the trial court to refuse to consider alternatives to granting a mistrial. When the prosecutor moved for a mistrial, he moved for "either a continuance or a mistrial." Trial Transcript I 202. In short, the state admitted that a mistrial was not necessary. Thus, a reasonable alternative - a continuance - existed, but was not embraced by the trial judge. Further, after the prosecutor moved

for "either a continuance or a mistrial," the prosecutor noted that he was present and prepared to go forward. Trial Transcript I 202-203. Thus, another alternative to granting the mistrial was proceeding with the trial as the prosecutor stated he was prepared to do. These facts clearly reveal the lack of manifest necessity.

Because reasonable jurists could disagree with this Court's resolution of the issues in this federal habeas petition, and because those issues are deserving of encouragement to proceed further, this Court should issue a COA on the Double Jeopardy issue in petitioner's case

### III. CONCLUSION.

WHEREFORE, for all of the foregoing reasons, this Court should enter an order granting a COA in petitioner's case.

                    Respectfully submitted,

                    JOHN H. BLUME, #1360
                    Cornell Law School
                    110 Myron Taylor Hall
                    Ithaca, NY 14853
                    (607) 255-10304


By: /s/ John H. Blume
     Counsel for Petitioner


October 22, 2007.